IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**FIRST SERVICE BANK**                                                              **PLAINTIFF**

**v.**                                              **CIVIL ACTION NO. 1:24-cv-262-TBM-RPM**

**WORLD AG INVESTMENT INC;**
**THOMAS L. SWAREK;**
**SUNNYSIDE WELL SERVICE INC.;**
**BILL D. BUFFINGTON**                                                  **DEFENDANTS**

## ORDER

From 2016 to 2023, First Service Bank entered into eleven loans with Thomas Swarek, Sunnyside Well Service Inc., and World AG Investment Inc—to which Thomas Swarek, World AG, or both of them, guaranteed. After these Defendants defaulted on the loans, First Service Bank filed this action. Although these Defendants "do not contest that they executed these agreements," they nevertheless move to dismiss First Service Bank's breach of contract claim against the Guarantors because the "guaranty agreements are so unconscionable that they fail to state a claim upon which relief can be granted." [17], p. 1. The Court disagrees and the Defendants' Motion to Dismiss [16] is denied.

Also before the Court is First Service Bank's Motion to Dismiss [30] Thomas Swarek, Sunnyside Well Service Inc., and World AG Investment Inc.'s Counterclaim against First Service Bank arising out of the September 17, 2020, Mainstreet Loan for $50,000,000.00 to which Swarek was a guarantor. The Court finds that First Service Bank's Motion to Dismiss [30] should be granted because Swarek's claim is barred by res judicata as this Court entered a Default Judgment against Thomas Swarek related to the Mainstreet Loan in *First Service Bank v. World Aircraft, Inc. and Thomas Swarek*, 1:24-cv-20-TBM-RPM, 2024 WL 3404604 (S.D. Miss. Jul. 12, 2024), and

because Sunnyside Well Service Inc., and World AG Investment Inc., fail to state a claim. But First Service Bank's argument that the Counterclaim must be dismissed because it is an asset of the El Dorado Gas & Oil bankruptcy estate is not well-taken and First Service Bank's Motion to Dismiss [30] is denied on this ground.

## I. STANDARD OF REVIEW

"The pleading standards for a Rule 12(b)(6) motion to dismiss are derived from Rule 8 of the Federal Rules of Civil Procedure, which provides, in relevant part, that a pleading stating a claim for relief must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *In re McCoy*, 666 F.3d 924, 926 (5th Cir. 2012) (quoting FED. R. CIV. P. 8(a)(2)). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). The Fifth Circuit has explained the *Iqbal/Twombly* standard as follows:

> In order for a claim to be plausible at the pleading stage, the complaint need not strike the reviewing court as probably meritorious, but it must raise 'more than a sheer possibility' that the defendant has violated the law as alleged. The factual allegations must be 'enough to raise a right to relief above the speculative level.'

*Oceanic Expl. Co. v. Phillips Petroleum Co. ZOC*, 352 F. App'x 945, 950 (5th Cir. 2009) (citing *Twombly*, 550 U.S. at 570. The Court need not "accept as true conclusory allegations or unwarranted deductions of fact." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). "The issue is not whether the plaintiff[] will ultimately prevail, but whether [they are]

entitled to offer evidence to support [their] claim[s]." *Cook v. City of Dallas*, 683 F. App'x 315, 318 (5th Cir. 2017) (citation omitted).[1]

## II. DEFENDANTS' MOTION TO DISMISS

The Defendants seek to dismiss First Service Bank's breach of contract claims asserted in Count II against the guarantors, Swarek and World AG, because the guaranty agreements are so unconscionable that they should "shock the conscience of the court." [16], p. 2.[2] "'Unconscionability is not precisely defined in the law,' but an unconscionable contract can be described as one that 'no man in his senses and not under delusion would make on the one hand . . . and no honest and fair man would accept on the other.'" *Altice USA, Inc. v. Johnson*, 661 S.W.3d 707, 719 (Ark. Ct. App. 2023) (citation omitted). "The burden of proving unconscionability is upon the party asserting the defense." *GGNSC Holdings, LLC v. Lamb By and Through Williams*, 487 S.W.3d 348, 357 (Ark. 2016) (citation omitted). "In assessing whether a particular contractual provision is unconscionable under Arkansas law, this Court must review the totality of the circumstances surrounding the negotiation and execution of the contract." *Stewart v. Nucor Corp.*, No. 3:13-cv-57-KGB, 2015 WL 5944920, at *4 (E.D. Ark. Oct. 14, 2015). "Two important

---

[1] Because the Defendants filed their 12(b)(6) Motion to Dismiss [16] as well as an Answer [18], First Service Bank argues that the Court should construe the Defendants' Motion to Dismiss as a motion for judgment on the pleadings under Rule 12(c). But for a motion to be considered under Rule 12(b), a defendant must simply file the motion *before* filing an answer. FED. R. CIV. P. 12(b); 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1361 at 445 (2d ed. 1990). The Defendants did so. As a result, this Court may consider their Motion to Dismiss under Rule 12(b)(6) rather than Rule 12(c). *See Lavigne v. Great Salt Bay Community School Bd.*, 2024 WL 1975596, *3 n.4 (D. Me. 2024) ("The School Board's motion is properly evaluated as a Rule 12(b) motion to dismiss, and not a Rule 12(c) motion for judgment on the pleadings, even though the School Board filed its motion to dismiss and Answer on the same day.").

[2] Although the Defendants rely on Mississippi law in support of their Motion, the guaranty agreements at issue provide that Arkansas law applies. [1-6], p. 3 (Loan 396798 Guaranty); [1-8], p. 4 (Loan 396815 Guaranty); [1-12], p. 3 (Loan 396817 Guaranty); [1-17], p. 4 (Loan 6618251 Guaranty); [1-21], p. 3 (Loan 396857 Guaranty); [1-30], p. 3 (Loan 397087 Guaranty); [1-33], p. 3 (Loan 6619226 Guaranty). Thus, in deciding whether the guaranty agreements are unconscionable, this Court looks to Arkansas law. *Stewart v. Nucor Corp.*, 829 F.3d 691, 693 (8th Cir. 2016) (applying Arkansas law to whether a contract provision formed under Arkansas law was unconscionable).

3

considerations are (1) whether there is a gross inequality of bargaining power between the parties to the contract and (2) whether the aggrieved party was made aware of and comprehended the provision in question." *Trail Dr., LLC v. Hill Fin., LLC*, No. 4:11-cv-173-SWW, 2012 WL 2060736, at *8 (E.D. Ark. Jun. 7, 2012).

Under Arkansas law, "[a] party must prove both procedural and substantive unconscionability before a contract or contract provision will be declared unenforceable." *Trail Dr., LLC v. Hill Fin., LLC*, No. 4:11-cv-173-SWW, 2012 WL 2060736, at *8 (E.D. Ark. Jun. 7, 2012) (collecting cases); *Easter v. Compucredit Corp.*, No. 08-cv-1041, 2009 WL 499384, at *4 (W.D. Ark. Feb. 27, 2009). Here, however, the Defendants argue only substantive unconscionability, which "looks to the terms of the contract and whether they are one-sided." *Trail Dr., LLC v. Hill Fin., LLC*, 2012 WL 2060736, at *8. Without any discussion as to procedural unconscionability—which "concerns the contract formation process, the manner in which it was entered, the fine print of the contract, any misrepresentations, and any unequal bargaining power"—the Defendants cannot meet their burden in proving unconscionability under Arkansas law and their Motion to Dismiss must be denied. *Trail Dr., LLC*, 2012 WL 2060736, at *8 (citing *Pleasants v. Am. Exp. Co.*, 541 F.3d 853, 857 (8th Cir. 2008)). Although the Court could end its analysis here, for clarity of the record, the Court further finds that the Defendants have failed to prove that the guaranty agreements are substantively unconscionable under Arkansas law.

According to the Defendants, the "substantive unconscionability is apparent on the face of the guaranty agreement and requires reference to no other documentation or information." [17], p. 1. Thus, in considering the Defendants' substantive unconscionability argument, this Court looks to the language of the guaranties at issue. Nine of the guaranty agreements provide:

> GENERAL WAIVERS. Guarantor, *to the extent permitted by law*, hereby waives (a) notice of acceptance of this Guaranty and all notice of the creation, extension or accrual of any of the Obligations, (b) diligence, presentment, protest, demand for payment, notice of dishonor, notice of intent to accelerate, and notice of acceleration, (c) notice of any other nature whatsoever to the extent permitted by law, (d) any requirement that the Lender take any action whatsoever against the Borrower or any other party or file any claim in the event of the bankruptcy of the Borrower, or (e) failure to protect, preserve, or resort to any collateral, and (f) any defense that could be asserted by Borrower, including defenses arising out of failure of consideration, breach of warranty, fraud, payment, statute of frauds, bankruptcy, lack of capacity, statute of limitations, lender liability, unenforceability of any loan document, accord and satisfaction, or usury. Guarantor, to the extent permitted by law, further waives and agrees not to assert any and all rights, benefits, and defenses that might otherwise be available under the provisions of the governing law that might operate, contrary to Guarantor's agreements in this Guaranty, to limit Guarantor's liability under, or the enforcement of, this Guaranty, including all defenses of suretyship.

[1-3] (emphasis added); [1-6] (Loan 396798 Guaranty); [1-9] (Loan 396815 Guaranty); [1-12] (Loan 396817 Guaranty); [1-18] (Loan 6618251 Guaranty); [1-21] (Loan 396857 Guaranty); [1-30] (Loan 397087 Guaranty); [1-33] (Loan 6619226 Guaranty); *see also* [1-15] (Loan 6618250 Modification and Deed of Trust) ("General Waiver. To the extent permitted by law . . ."). And the remaining guaranty agreements state:

> **4.  Waivers of notice and Additional Authority**.  Guarantor further waives notice of any default by any Borrow upon its Obligations to Lender, and of the exercise of possessory remedies or foreclosure on any collateral received as security for the Obligations. Neither Lender nor any subsequent holder of the Obligations shall be required to resort to any collateral other than this Guaranty or attempt to recover upon the liability of any Borrower in any way or any other security for the Obligations as a condition prerequisite to recovering upon this Guaranty. Lender and any subsequent holder of the Obligations may, without notice to Guarantor, deal with any Borrower or anyone on their behalf, from time to time with respect to the Obligations in any manner whatsoever, and hereby *specifically waives each and every defense predicable upon such dealing except the defense of actual payment in cash on the Obligations evidence by the Obligations*.

[1-27] (emphasis added) (Loan 396972 Guaranty); [1-24] (Loan 396953 Guaranty). The Defendants argue that such language is substantively unconscionable because "[a] Guarantor can

assert literally no defense whatsoever to a claim, a mere claim, of liability" as the language "is so broad" and "so one-sided as to completely exculpate the bank from any liability whatsoever and allow the bank to enforce a guaranty, even if the bank had been paid in full." [17], pps. 2-4.

Although the guaranty agreements at issue include exculpatory clauses, which are disfavored under Arkansas law, they are not "invalid *per se* and have been upheld in several cases." *Finagin v. Ark. Dev. Fin. Auth.*, 355 Ark. 440, 139 S.W.3d 797, 806 (Ark. S. Ct. 2003) ("An exculpatory contract is one in which a party seeks to absolve himself in advance for the consequences of his own negligence."). There are two rules of construction the Arkansas Supreme Court has applied to exculpatory contracts: "[f]irst the contract is to be strictly construed against the party relying on it . . . Second, it is not impossible to avoid liability through contract, but in order to do so the negligent liability to be avoided must be clearly set out in the contract." *See Ray v. Albemarle Corp.*, No. 07-cv-1076, 2009 WL 2447919, at *2 (W.D. Ark. Aug. 10, 2009) (citing *Jordan v. Diamond Equip. & Supply Co.*, 362 Ark. 142, 149, 207 S.W.3d 525 (2005); *Plant v. Wilbur*, 345 Ark. 487, 493, 47 S.W.3d 889 (2001); *Edgin v. Entergy Operations, Inc.*, 331 Ark. 162, 961 S.W.2d 724 (1998); *Farmers Bank v. Perry*, 301 Ark. 547, 550, 787 S.W.2d 645 (1990)).

In considering the "totality of the circumstances surrounding the execution of the exculpatory contract in order to determine the intent of the parties," Arkansas courts have held that exculpatory contracts may be enforced "(1) when the party is knowledgeable of the potential liability that is released; (2) when the party is benefiting from the activity which may lead to the potential liability that is released; and (3) when the contract that contains the clause was fairly entered into." *Ray*, 2009 WL 2447919, at *2; *Stewart v. Nucor Corp.*, 829 F.3d 691, 693 (8th Cir. 2016) (citing *Finagin v. Ark. Dev. Fin. Auth.*, 355 Ark. 440, 139 S.W.3d 797, 806 (2003)). The

Defendants, however, do not dispute these elements. Instead, the Defendants merely argue that "[t]his language is dramatically unfair." [17], p. 4.[3] Not only are the Defendants' arguments conclusory, but they also do not provide any evidence of "fraud, duress, misrepresentation, or any other inequitable conduct on the part of [First Service Bank]." *Stewart*, 829 F.3d at 693.

In fact, the Defendants fail to address the limiting language found within the guaranty agreements—nine of which provide that they are only enforceable "to the extent permitted by law" and the remaining guaranty agreements provide that the defense of "actual payment" is not waived. *See C&C Int'l Trading Co. v. Buckhead Meat Co.*, 527 F. Supp. 3d 1016, 1027 (E.D. Ark. 2021) ("it is worth noting that the liability limitation provision only applies to the 'extent permitted by law' and that the Contract provides for severance of invalid provisions"); *Walker Ford Sales v. Gaither*, 265 Ark. 275, 278, 578 S.W.2d 23, 24 (1979) (enforcing "to the extent allowed by law" provision with respect to limitation of warranties). Without more, the Defendants fail to prove that the guaranty agreements are unconscionable. *See Ray v. Albemarle Corp.*, No. 07-cv-1076, 2009 WL 2447919, at *2–6 (W.D. Ark. Aug. 10, 2009) (enforcing exculpatory clause and granting summary judgment because of the plaintiff's absence of evidence disputing the three *Finagin* factors); *Jordan v. Diamond Equip. & Supply Co.*, 207 S.W.3d 525, 536 (Ark. S. Ct. 2005). As a result, their Motion to Dismiss [16] is denied.

### III. FIRST SERVICE BANK'S MOTION TO DISMISS COUNTERCLAIM

First Service Bank argues that the Defendants' Counterclaim [18] against them must be dismissed for three reasons: (1) because Swarek's Counterclaim is barred by res judicata, (2)

---

[3] Notably, the Defendants did not file a reply in support of their Motion to Dismiss [16]. So the Court has only twenty-nine numbered paragraphs of conclusory arguments from the Defendants in support of their argument. [16], [17].

because World AG and Sunnyside's Counterclaim fails to state a claim, and (3) because the Counterclaim it is owned by the bankruptcy estate of El Dorado Gas & Oil.[4] [31], p. 1. The Court will address each in turn.

**A. Res judicata bars Swarek's Counterclaim**

"Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S. Ct. 411, 66 L. Ed. 2d 308 (1980). "[R]es judicata encompasses two separate but linked preclusive doctrines: (1) true res judicata or claim preclusion and (2) collateral estoppel or issue preclusion." *Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460, 466–67 (5th Cir. 2013) (quoting *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005)). True res judicata "bars the litigation of claims that either have been litigated or should have been raised in an earlier suit," *Test Masters*, 428 F.3d at 571, while collateral estoppel "precludes relitigation of only those issues actually litigated in the original action, whether or not the second suit is based on the same cause of action," *Moch v. E. Baton Rouge Par. Sch. Bd.*, 548 F.2d 594, 596 (5th Cir. 1977); *see also Allen*, 449 U.S. at 94. First Service Bank claims that Swarek's Counterclaim is barred by res judicata because this Court entered a Final Judgment against Swarek on the Mainstreet Loan in *First Service Bank v. World Aircraft, Inc. and Thomas Swarek*, 1:24-cv-20-TBM-RPM (S.D. Miss. Jul. 13, 2024). The Court agrees.

---

[4] Although the Counterclaim identifies El Dorado *Oil & Gas* as the entity First Service Bank entered into the Mainstreet Loan with, First Service Bank asserts—and the Defendants do not dispute—that El Dorado *Gas & Oil*, Inc. ("EDGO") is actually the borrower on the Mainstreet Loan. [31], p. 3 n.3; [33], p. 1 ("FSB asserts that claims of these guarantors are owned by El[] Dorado Gas & Oil, Inc. ('EDGO') and can only be asserted by that Debtor in its Chapter 11 proceeding and that the automatic stay prevent assertion of these claims. . . . the counterclaim is asserted against FSB and not EDGO.").

"Res judicata bars a claim if the following four requirements are met: '(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *Comer v. Murphy Oil USA, Inc.*, 839 F. Supp. 2d 849, 855 (S.D. Miss. Mar. 20, 2012) (quoting *Test Masters*, 428 F.3d at 571) (interpreting Mississippi law). Swarek challenges only the first and the third elements but, out of an abundance of caution, the Court will address each in turn.

Although it is undisputed that Swarek was a defendant in the prior action, Swarek nevertheless argues that the parties in this action are not identical to those in *First Service Bank v. World Aircraft, Inc. and Thomas Swarek*, 1:24-cv-20-TBM-RPM (S.D. Miss. Jul. 13, 2024), because there are two additional Defendants here: World AG and Sunnyside. But First Service Bank is not attempting to apply res judicata to World AG and Sunnyside. So despite Swarek's argument, "the naming of additional parties does not eliminate the res judicata effect of a prior judgment 'so long as the judgment was rendered on the merits, the cause of action was the same and the party against whom the doctrine is asserted was a party to the former litigation.'" *Comer*, 839 F. Supp. 2d at 855 (quoting *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 249 (9th Cir. 1992) (quoting *Dreyfus v. First Nat'l Bank of Chicago*, 424 F.2d 1171, 1175 (7th Cir. 1970), *cert. denied*, 400 U.S. 832, 91 S. Ct. 64, 27 L. Ed. 2d 63 (1970)); *Kennedy v. Pfizer, Inc.* No. 13-cv-3132-SMH, 2014 WL 4092479, *3 (W.D. La. Aug. 13, 2014).

It is also undisputed that the second requirement—the judgment in the prior action was rendered by a court of competent jurisdiction—is satisfied. Indeed, "it is familiar law that a federal court always has jurisdiction to determine its own jurisdiction." *United States v. Ruiz*, 536 U.S. 622,

628, 122 S. Ct. 2450, 153 L. Ed. 2d 586 (2002). Thus, "this Court had the authority to determine whether it had jurisdiction over the [prior] lawsuit." *Comer*, 839 F. Supp. 2d at 856.

The third requirement demands that the prior action was concluded by a final judgment on the merits. And in the prior action, *First Service Bank v. World Aircraft, Inc. and Thomas Swarek*, 1:24-cv-20-TBM-RPM, this Court granted First Service Bank's Motion for Default Judgment against Swarek in the amount of $54,928,751.83 and entered a Final Judgment against him.[5] *First Service Bank v. World Aircraft, Inc. and Thomas Swarek*, 1:24-cv-20-TBM-RPM (S.D. Miss. Jul. 12, 2024). Since the Fifth Circuit has held that "a default judgment is a judgment 'on the merits' for purposes of res judicata," the third res judicata element is also satisfied. *New York Party Shuttle, L.L.C. v. Nat'l Lab. Rel. Bd.*, 18 F.4th 753, 765 (5th Cir. 2021).

"As for the fourth requirement, the Fifth Circuit has adopted a transactional test for determining whether two cases involve the same claim or cause of action." *Comer*, 839 F. Supp. 2d at 855 (citing *Test Masters*, 428 F.3d at 571). "Under the transactional test, a prior judgment's preclusive effect extends to all rights of the plaintiff with respect to all or any part of the transaction, or series of connected transactions, out of which the original action arose." *Id*. In other words, "the critical issue is whether the two actions were based on the 'same nucleus of operative facts.'" *Eubanks v. F.D.I.C.*, 977 F.2d 166,171 (5th Cir. 1992) (citation omitted). In making this determination, courts "look to the factual predicate of the claims asserted, not the legal theories upon which the plaintiff relies." *Id*. (collecting cases).

---

[5] This Court also denied Swarek's Motion for Reconsideration of the Court's Order granting summary judgment and entering a default judgment against him. *First Service Bank v. World Aircraft, Inc. and Thomas Swarek*, 1:24-cv-20-TBM-RPM (S.D. Miss. Mar. 5, 2025). Since then, First Service Bank has filed a Motion for Attorney fees and, as a result, the judgment against Swarek may be amended to include attorney fees.

In the prior action, First Service Bank sued Swarek as a guarantor on the $50,000,000.00 Mainstreet Loan, which is the sole basis of Swarek's Counterclaim. In the first paragraph of his Counterclaim, Swarek states that "[i]n September, 2020, Plaintiff and El Dorado Oil & Gas, Inc. entered into the Mainstreet Loan in the amount of $50,000,000.00." [18], p. 10, ¶1. He further asserts that "Plaintiff was required to designate one person who would be well versed in the details of the Mainstreet loan and other loans and options available to EDOG and Swarek but failed to do this." *Id*. at p. 11, ¶11. And that "Plaintiff further promised, at the inception of the Mainstreet Loan that restructuring, modification and interest credits would be made available. . . Rather than doing so, Plaintiff refused these options and declared default, without valid justification and despite offering these same benefits to others." *Id*. at ¶¶ 13,14. As a result, he argues that First Service Bank's "actions amount to a breach of contract . . . create lender liability . . . [and] are discriminatory." [18], p. 11. In other words, through his Counterclaim, Swarek attempts to relitigate this Court's prior judgment finding Swarek was in default on his payment obligations arising out of the $50,000,000.00 Mainstreet Loan. *See Test Masters*, 428 F.3d at 571. And "[i]f a party can only win the suit by convincing the court that the prior judgment was in error, the second suit is barred." *Comer*, 839 F. Supp. 2d at 855. Thus, Swarek's Counterclaim—which focuses on the $50,000,000.00 Mainstreet Loan—against First Service Bank is barred by res judicata. *Miller v. Meinhard-Commercial Corp.*, 462 F.2d 358, 360 (5th Cir. 1972) ("any attempt by the parties or those in privity with them to relitigate any of the matters that were raised or could have been raised therein is barred under the doctrine res judicata.").

11

As a result, Swarek's narrow Counterclaim is dismissed. But it is worth noting that First Service Bank has not sought to prohibit Swarek from asserting defenses related to the eleven additional loans made by First Service Bank to Swarek, or one of his companies, which are the subject of First Service Bank's Complaint in this case.

**B. World AG and Sunnyside fail to state a claim**

As discussed above, "[t]he pleading standards for a Rule 12(b)(6) motion to dismiss are derived from Rule 8 of the Federal Rules of Civil Procedure, which provides, in relevant part, that a pleading stating a claim for relief must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *In re McCoy*, 666 F.3d at 926 (quoting FED. R. CIV. P. 8(a)(2)). The Counterclaim fails to do so.

Instead, the Counterclaim provides mere conclusory allegations in support of the Defendants' claims for breach of contract and breach of the covenant of good faith and fair dealing. [18], p. 11-12, ¶¶ 20, 25. To state a claim for breach of contract under Arkansas law, a party must assert: "(1) the existence of a valid and enforceable contract between the plaintiff and defendant, (2) the obligation of defendant thereunder, (3) a violation by the defendant, and (4) damages resulting to plaintiff from the breach." *Arkansas Development Finance Authority v. Wiley*, 611 S.W.3d 493, 498 (S. Ct. Ark. 2020) (citation omitted). With these requirements in mind, the Court finds that these Defendants fail to state a breach of contract claim against First Service Bank. To begin, they provide no facts describing First Service Bank's obligations under the contract. And they do not show how First Service Bank allegedly violated its contractual obligations. Instead, they merely claim that EDGO was involved in litigation with First Service Bank which prevented EDGO from accessing funds that could have been used for the obligations of these guarantors. [18], p. 10. Their

Response [33] to First Service Bank's Motion to Dismiss manages to be even more conclusory than the allegations found within their Counterclaim, as these Defendants provide no caselaw, authority, or otherwise offer any analysis in support of their claims. Without more, these Defendants fail to state a claim for breach of contract. *Arkansas Dev. Finance Authority*, 611 S.W.3d at 498. And for all of the same reasons, plus because Arkansas law "does not recognize a separate tort cause of action for breach of those implied covenants" with no underlying breach of contract claim remaining, the Defendants' claim for breach of the covenant of good faith and fair dealing must be dismissed. *West Memphis Adolescent Residential, LLC v. Compton*, 374 S.W.3d 922, 927 (Ark. Ct. App. 2010) (citing *Preston v. Stoops*, 285 S.W.3d 606 (2008)).

Finally, the Defendants assert that "[t]hese actions are discriminatory." [18], p. 11, ¶ 22. But this lone allegation fails to identify a cause of action, much less state a claim for relief. *See Goad v. Reyes*, No. 22-cv-41-FB, 2022 WL 3337813, at *4 (W.D. Tex. Jun. 16, 2022); *Shemwell v. Cannon*, 352 F. Supp. 3d 690, 697 (N.D. Tex. 2019).

Accordingly, World AG and Sunnyside's Counterclaim against First Service Bank must be dismissed for failure to state a claim.

## C. The Counterclaim is not owned by a bankruptcy estate

Even if the Defendants' Counterclaim was not properly dismissed due to res judicata or for failure to state a claim, First Service Bank nevertheless argues that the Counterclaim must be dismissed because it is an asset of the El Dorado Gas & Oil bankruptcy estate. It is unclear to this Court whether such an argument arises under a subject matter jurisdiction analysis, a standing analysis, or some other unidentified framework, as First Service Bank provides no authority or basis for its argument. Instead, First Service Bank merely argues that "100% of the factual averments in

the [18] Counterclaim revolve around supposed FSB wrongdoing towards EDGO." [31], p. 2. As a result, First Service Bank claims, with no caselaw or authority in support of their argument, that "as a matter of law, those claims are both owned by the EDGO bankruptcy estate—not Counterclaimants—and that the Counterclaimants' attempt to assert them is in violation of the automatic stay in the EDGO Bankruptcy." [31], p. 4.

Although the Defendants admit that El Dorado Gas & Oil has a claim against First Service Bank, they clarify that the "losses asserted in this Counterclaim are not the losses of EDGO, these losses are the losses of these Defendants arising out of the guaranties." [33], p. 2. According to the Defendants, they are "alleged to be guarantors of the obligation of EDGO to FSB. These losses [] flow from the claim on the guaranties asserted by FSB and exist only on account of that assertion by FSB." [33], p. 2. Thus, the Defendants argue that First Service Bank's actions "amount to a breach of contract and entitle Swarek to damages." [18], p. 11.

From the pleadings, it appears that the Defendants do attempt to plead their own claim rather than that of El Dorado Gas & Oil. And without any authority presented requiring this Court to find to the contrary, the Court declines to find that the Counterclaim is owned by the bankruptcy estate El Dorado Gas & Oil, which is not a party to this action. For these reasons, First Service Bank's Motion to Dismiss is denied on this ground.

## IV. CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that the Defendants' Motion to Dismiss [16] is DENIED.

IT IS FURTHER ORDERED AND ADJUDGED that First Service Bank's Motion to Dismiss [30] is GRANTED IN PART and DENIED IN PART.

This, the 16th day of September, 2025.

_____
TAYLOR B. McNEEL,
UNITED STATES DISTRICT JUDGE