**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**FIRST SERVICE BANK** **PLAINTIFF**

**v.**

**CIVIL ACTION NO. 1:24-cv-262-TBM-RPM**

**THOMAS L. SWAREK;
BILL D. BUFFINGTON;
GS HOLDINGS, INC.; *and*
COTTONWOOD RECREATION LAND, INC.** **DEFENDANTS**

**ORDER**

Plaintiff First Service Bank entered into eleven loans with Thomas Swarek, Sunnyside Well Service Inc. ("Sunnyside"), and World AG Investment Inc. ("World AG") from 2016 to 2023. Thomas Swarek, World AG, or both of them, guaranteed each loan. After these Defendants defaulted on the loans, First Service Bank filed this action. First Service Bank now moves for partial summary judgment on some of its claims against Thomas Swarek, and to dismiss its claims against the Buffington Parties.[1] [68]; [87]. Months later, Swarek—proceeding *pro se*—moved for leave to file an untimely response to summary judgment and filed his response the same day. [85]; [86]. After First Service Bank's reply noted Swarek had failed to cite any evidence in his response, Swarek filed a Motion for Leave to File Limited Evidentiary Supplement [98] with attached exhibits. [98-1]; [98-2]; [98-3]; [98-4].

The Court grants Swarek's Motion for Leave to File Response to Plaintiff's Motion for Summary Judgment Out of Time [85] and Swarek's Motion for Leave to File Limited Evidentiary

[1] First Service Bank's Motion to Dismiss identified the "Buffington Parties" as Bill D. Buffington, GS Holdings, Inc., and Cottonwood Recreation Land, Inc. [87].

Supplement. [98]. But the Court finds the additional materials Swarek provides do not defeat First Service Bank's partial request for summary judgment. Swarek only makes unsupported and conclusory arguments in opposition, and the standard at summary judgment requires more. In the absence of Swarek raising a legitimate legal issue or a genuine issue of material fact, the Court grants First Service Bank's partial Motion for Summary Judgment [68], which as modified,[2] involves First Service Bank's claims under Loan No. 396817 (The 8 Bayou Loan); Loan No. 396745 (The Hunting Land Loan); Loan No. 396857 (The Three-Rivers Loan); and Loan No. 396087 (The Airplane Loan). [68]. First Service Bank indicates it will move to dismiss its claim against Swarek regarding Loan No. 396815 without prejudice. *Id.*, at p. 1. The Court also grants First Service Bank's Motion to Dismiss the Buffington Parties and therefore finds First Service Bank's request for an extension to respond to previously propounded discovery by those parties is moot. [87].

## I. BACKGROUND AND PROCEDURAL HISTORY

From 2016 to 2023, First Service Bank entered into eleven loans with Thomas Swarek, Sunnyside, and World AG—to which Thomas Swarek, World AG, or both of them, guaranteed. All of the loans, including the $50,000,000.00 "Main Street Loan," became delinquent and First Service Bank has since filed various actions against Swarek for his failure to meet those payment obligations. First Service Bank's first case against Swarek regarding the Main Street Loan was initiated on January 19, 2024. *See First Service Bank v. Swarek*, 1:24-cv-20-TBM (S.D. Miss.) (*"Swarek I"*), [1]. There, this Court granted both First Service Bank's motion for summary

[2] After filing its Motion for Summary Judgment, First Service Bank continued to liquidate its collateral securing the loans at issue. [101]. Based on these efforts, First Service Bank represented to the Court that it had satisfied all Swarek's obligations regarding Loan No. 6618251 (The Antique Warehouse Loan) and Loan No. 6619226 (The Elkhart Loan), and "modifie[d] its [68] Motion for Summary Judgment as to Fewer Than All the Claims to remove its request for summary judgment on Loan No. 6618251 ([The] Antique Warehouse Loan) and Loan No. 6619226 ([The] Elkhart Loan)." [101], p. 1.

judgment and motion for default judgment against Swarek in the amount of $54,928,751.83. *First Service Bank v. World Aircraft, Inc., et al.*, No. 1:24-cv-20-TBM, 2024 WL 3404604 (S.D. Miss. Jul. 12, 2024); *Swarek I*, [47]. Swarek subsequently filed a motion to set aside and for reconsideration, which the Court denied on March 5, 2025. *First Service Bank v. World Aircraft, Inc., et al.*, No. 1:24-cv-20-TBM, 2025 WL 714452 (S.D. Miss. Mar. 5, 2025); *Swarek I*, [64]. Swarek appealed the Court's judgment on November 3, 2025. *First Service Bank v. Swarek*, No. 25-60618 (5th Cir. 2025). Most recently, Swarek filed a second motion for relief from judgment on April 13, 2026. *Swarek I*, [79]. After this Court denied Swarek's second reconsideration motion, *First Service Bank v. World Aircraft, Inc., et al.*, No. 1:24-cv-20-TBM, 2026 WL 1647455 (S.D. Miss. Jun. 8, 2026); *Swarek I,* [88], Swarek appealed to the Fifth Circuit, *First Service Bank v. Swarek*, No. 26-60550 (5th Cir. 2026). Both appeals remain pending.

The instant action relates to "eight additional loans made by First Service Bank to Swarek or one of his companies, which are guaranteed by Swarek or World Ag or some combination of the same." [1]; [60], p. 2. Although Sunnyside, World AG, and Swarek filed a Motion to Dismiss [16], the Court found that the guaranty agreements within the loan documents were not unconscionable, and the Motion was denied on September 16, 2025. [54]. The Court also granted First Service Bank's Motion to Dismiss [30] Swarek's sole counterclaim, finding that it is barred by res judicata and because Sunnyside, and World AG, failed to state claims for relief. *Id.* On September 25, 2025, the parties filed a stipulation dismissing Sunnyside. [56]. World AG was later dismissed from this action on November 18, 2025. [67].

First Service Bank filed an Amended Complaint [60] on October 27, 2025, and the instant partial Motion for Summary Judgment [68] against Swarek eventually followed. First Service Bank

attached various loan agreements, notes, modifications and guarantees to its First Amended Complaint, [60-1] to [60-22], as it did for its original Complaint. In its Motion, as modified, First Service Bank seeks $2,529,898.90 (plus prejudgment interest from December 1, 2025, through the date of judgment) for the following loans that it alleges Swarek was either a borrower or guarantor to. *Id.*, at p. 1. The total amounts and per-diem prejudgment interest sought by First Service Bank against Swarek at this time[3] are as follows:

| **Name**[4] | **Loan Number** | **Status** | **Amount Owed** | **Per-Diem Interest**[5] |
|---|---|---|---|---|
| The 8 Bayou Loan | 396817 | Borrower | $275,378.95 | $36.77 |
| The Hunting Land Loan | 396745 | Guarantor | $1,163,945.53 | $170.83 |
| The Three-Rivers Loan | 396857 | Guarantor | $380,817.76 | $55.39 |
| The Airplane Loan | 396087 | Guarantor | $709,756.66 | $115.62 |

The Court examines each loan below in detail.

**Loan No. 396817 (The 8 Bayou Loan)**

On March 26, 2018, Swarek, as a borrower, entered into a loan agreement with First Service Bank for a principal amount of $992,000.00 and executed a promissory note for the same amount. [60-8]. After both were executed, the parties entered into several agreements renewing, modifying and expanding the agreement and accompanying note over time. [69], p. 2. By February 26, 2023, the parties executed an agreement that indicated the loan balance was $1,800,000.99. [68-1], p. 6. This loan is referred to as the 8 Bayou Loan (Loan No. 396817). The agreement also provided a line

[3] First Service Bank indicates that Swarek also owes it "for attorneys' fees and other expenses in preserving and protecting the collateral which are not being sought in this motion for summary judgment for sake of time as Swarek already has a $54,928,751.83 judgment against him." [68-1], at p. 2, n.1.

[4] The "names" of the loans listed in this column are derived from the Declaration of Darla McJunkins, Senior Vice President of Commercial Loans and Risk Management of First Service Bank. [68-1], pps. 1-2.

[5] First Service Bank purports the numbers in this column represent the per diem prejudgment interest on each loan from and including December 1, 2025, to the date of entry of the judgment. [68], p. 2.

of credit limit of $1,802,000.00. [68-1], pps. 6-7. Darla McJunkins, Senior Vice President of Commercial Loans and Risk Management of First Service Bank, submitted a sworn Declaration in support of First Service Bank's Motion for Summary Judgment. *Id*. McJunkins indicated Swarek had defaulted on the 8 Bayou Loan later that year. *Id.*, at p. 2.

The 8 Bayou Loan was secured against real and personal property and subject to "one or more cross-collateralization provisions" within the loan materials. *Id.*, at pps. 2, 7. Following Swarek's default on the 8 Bayou Loan, First Service Bank provided Swarek with a notice of default, suspension, and acceleration on February 13, 2024. [60-10]. Since then, First Service Bank agreed to a "deed-in-lieu arrangement" with Swarek on the collateral securing the loan, liquidated other collateral related to the loan, and applied the proceeds gained from liquidation against the amount owed on the 8 Bayou Loan. [68-1], p. 2. McJunkins indicates the amount owed on the 8 Bayou Loan (Loan No. 396817) as of December 1, 2025, consists of the following amounts:

| **Owed Component** | **Amount Owed** |
|---|---|
| Principal | $215,278.58 |
| Interest | $25,256.46 |
| Late Fees | $2,400.00 |
| Redeemed Taxes | $32,443.91 |
| **Total** | **$275,378.95** |

McJunkins Decl. [68-1], pps. 2-3; [101], p. 1. McJunkins indicated interest continues to accrue on this loan at a rate of $36.77 per day. [68-1], p. 2.

**Loan No. 396745 (The Hunting Land Loan)**

First Service Bank purports that it and World Ag entered into a $1,000,000.00 commercial line of credit agreement and related promissory notes since 2016 and that those agreements were renewed, modified, and expanded multiple times after execution. [60], p. 5. On October 24, 2022, World Ag executed a renewal agreement for that commercial line of credit and an accompanying

note, referred to here as the Hunting Land Loan (Loan No. 396745). [60-1]. That agreement and note indicate that the loan balance was $900,000 at the time, with the same line of credit limit of $1,000,000.00. *Id.* Swarek personally guaranteed the Hunting Land Loan and all "indebtedness" of World Ag to First Service Bank by and through an "Unlimited Continuing Guaranty." [60-3]. Swarek defaulted on the renewed Hunting Land loan agreement. [69], p. 4. On February 13, 2024, First Service Bank provided Swarek with a notice of default, suspension, and acceleration of the Hunting Land Loan. [60-4]. McJunkins submits a similar calculation for the Hunting Land Loan (Loan No. 396745), guaranteed by Swarek, indicating the following principal, interest, and late fees as of December 1, 2025:

| **Owed Component** | **Amount Owed** |
|---|---|
| Principal | $1,000,000.00 |
| Interest | $163,145.53 |
| Late Fees | $800.00 |
| **Total** | **$1,163,945.53** |

McJunkins Decl. [68-1], p. 3; [101], p. 1. McJunkins indicated interest continues to accrue on this loan at a rate of $170.83 per day. [68-1], p. 3.

**Loan No. 396857 (The Three-Rivers Loan)**

On February 13, 2019, El Dorado Gas & Oil, Inc. ("El Dorado") entered into a loan agreement with First Service Bank in the amount of $862,500.00. [60-14]. Swarek personally, and on behalf of World AG, guaranteed the loan through different "Unlimited Continuing" guarantees. [60-15], pps. 3, 6. At execution, El Dorado provided a promissory note related to this loan, referred to here as the Three-Rivers Loan (Loan No. 396857), which was subsequently renewed twice. [69], p. 5. On June 6, 2023, El Dorado and First Service Bank entered into an agreement to renew the promissory notes. [60-14], p. 6. Swarek then defaulted under Loan No. 396857 as renewed. [69], p.

6. On April 5, 2024, First Service Bank provided Swarek with a notice of default, suspension, and acceleration. [60-16]. McJunkins submits a similar calculation as before for the Three-Rivers Loan (Loan No. 396857), guaranteed by Swarek, indicating the following principal, interest, and late fees as of December 1, 2025:

| Owed Component | Amount Owed |
|---|---|
| Principal | $286,923.16 |
| Interest | $91,094.60 |
| Late Fees | $2,800.00 |
| **Total** | **$380,817.76** |

McJunkins Decl. [68-1], p. 3-4; [101], p. 1. McJunkins indicated interest continues to accrue on this loan at a rate of $55.39 per day. [68-1], p. 4.

**Loan No. 396087 (The Airplane Loan)**

On May 25, 2023, El Dorado executed another loan and promissory note with First Service Bank for $1,008,451.00, referred to here as the Airplane Loan (Loan No. 397087). [60-17]. Swarek executed a guarantee for this loan personally, and on behalf of World Ag. *Id.*, at p. 1; [60-18], p. 3. Swarek defaulted under Loan No. 397087. [69], p. 7. On April 5, 2024, First Service Bank provided Swarek with a notice of default, suspension, and acceleration. [60-19]. McJunkins submits a similar calculation as before for the Airplane Loan (Loan No. 397087), guaranteed by Swarek, indicating the following principal, interest, late fees, and incidental expenses ("[h]anger [s]torage and plane inspections") as of December 1, 2025:

| Owed Component | Amount Owed |
|---|---|
| Principal | $523,554.00 |
| Interest | $145,287.66 |
| Late Fees | $2,800.00 |
| Hanger Storage and plane inspections | $38,115.00 |
| **Total** | **$709,756.66** |

McJunkins Decl. [68-1], p. 4; [101], p. 1. McJunkins indicated interest continues to accrue on this loan at a rate of $115.62 per day. [68-1], p. 5.

**Swarek's Untimely Response and Motion to Supplement the Record**

One hundred and forty-eight days after his response was due, on April 17, 2026, Swarek filed a motion for leave to file a late response to First Service Bank's motion for summary judgment. [85]. Without leave of Court, Swarek filed his untimely response the same day. [86]. Swarek's response raises four areas where Swarek contends "genuine issues remain" concerning: (i) "the true funding, consideration, and disbursement of loan proceeds"; (ii) "the defaults and acceleration events Plaintiff relies upon"; (iii) "the amounts claimed" by First Service Bank; and (iv) "because core related issues are presently being litigated elsewhere." *Id.*, at p. 3. Swarek also reiterates his "position that Plaintiff's litigation posture raises concerns of claim splitting and piecemeal adjudication" and that "the governing instruments appear to tie federal venue" to another federal court district. *Id.*, at p. 4. Swarek surmises that "[t]hese issues are not merely legal in nature but involve factual determinations that require development of the record and are not appropriate for resolution on summary judgment." *Id.* First Service Bank filed a reply in support of its motion for summary judgment on May 6, 2026. [96].

Twenty days after First Service Bank filed its reply, Swarek filed a Motion for Leave to File Limited Evidentiary Supplement, asking the Court for leave to file additional evidentiary materials for the Court to consider on summary judgment. [98]. Swarek indicated that "[a]t the time of filing, [he] sought to avoid burdening the Court with extensive duplicative filings and voluminous exhibit materials already appearing across related proceedings involving the same underlying lending relationship, enforcement activity, and overlapping factual issues." *Id.*, at p. 1. Swarek claims he

"believed that many of the relevant factual materials were already before the Court or [were] otherwise accessible through related proceedings involving the same underlying transactions and enforcement activity." *Id.*, at p. 2. Swarek stated briefing occurred when he "was transitioning from representation by prior counsel to *pro se* status while simultaneously addressing overlapping proceedings involving the same transactional record." *Id.*

Swarek attached a number of exhibits to his Motion, including two emails from the Chief Financial Officer of First Service Bank, Kenneth Barnard, a document titled "SETTLEMENT STATEMENT" regarding "Loan No. 6618742[,]" and excerpts from a document Swarek purports to be an affidavit.[6] Swarek requests these materials be considered, as well as "[s]elected excerpts and exhibits from [Swarek]'s pending Rule 60(b)(3) filings in Case No. 1:24-cv-00020-TBM, Dkt. #79; especially the factual chronology and funding-related materials contained within the V. BACKGROUND section, pages 3 and 4[.]" [98], p. 3. On June 5, 2026, First Service Bank filed a response to Swarek's Motion [99], and a supporting memorandum [100], opposing consideration of the materials cited by Swarek.[7]

**First Service Bank's Motion to Dismiss the Buffington Parties**

After moving for summary judgment, First Service Bank also moved to dismiss its claims without prejudice against the "Buffington Parties"—Bill D. Buffington, GS Holdings, Inc., and

[6] Swarek purports this exhibit, referenced as "Exhibit 3," is page 3, paragraphs 12-16 of an affidavit "[r]eferenced in [*First Service Bank v. Swarek*,] 1:24-cv-00020-TBM-RPM, Dkt. #79-1[.]" [98], p. 1. What follows is a single-page document showing paragraphs numbered 10 through 12 and a page number of "3" at the bottom. *Id.*, at p. 2. It is unclear what the attached document is, as the excerpt attached is neither page 3 nor paragraphs 12-16 of ECF No. 79-1, *First Service Bank v. Swarek*, 1:24-cv-00020-TBM-RPM. *See* [100], p. 8 (First Service Bank's opposition observing the same).

[7] While First Service Bank's Motion for Summary Judgment [68] was pending, Swarek filed a Motion [83] to stay sale of farmland and related proceedings on April 13, 2026. The Court denied that Motion on May 5, 2026, finding that the issues raised by Swarek had no bearing on the parties or issues before the Court in this action. [95].

Cottonwood Recreation Land, Inc. [87]. First Service Bank also requested an extension to respond to discovery propounded by the Buffington Parties while resolution of its Motion to Dismiss was pending.[8] *Id.*

**II. SWAREK'S MOTIONS FOR LEAVE**

This Court's Local Rules provide that a party opposing any motion "must either respond to the motion or notify the court of its intent not to respond" within "the time allowed for response[.]" L. U. CIV. R. 7 (b)(3)(a). The Local Rules of this Court provide that responses to motions, such as First Service Bank's partial Motion for Summary Judgment [68], must be filed by the nonmoving party "within 14 days[.]" L. U. CIV. R. 7 (b)(4). Given First Service Bank filed its Motion on November 20, 2025, Swarek's response and supporting evidence was due on December 4, 2025, one hundred and thirty-four days before his response was actually filed, and one hundred and seventy-three days before his Motion for Leave to File Limited Evidentiary Supplement and supporting attachments were filed.

First Service Bank's Reply in support of its Motion for Summary Judgment does not address the untimeliness of Swarek's response. [96]. Instead, First Service Bank articulates this argument for the first time in its response to Swarek's Motion for Leave to File Limited Evidentiary Supplement, arguing that Federal Rule of Civil Procedure 6(b)(1)(B) "governs requests to act after an expired deadline" and that Swarek has failed to show "good cause and excusable neglect" for his untimely filings. [100], p. 3.

[8] The referenced discovery was Buffington's "First Set of Interrogatories and Requests for Production," propounded on First Service Bank February 4, 2026. *Id.* On March 5, 2026, the Court entered a text-only order granting First Service Bank until April 20, 2026, to respond to the discovery to enable First Service Bank to seek intervention in an adversary bankruptcy proceeding involving El Dorado, World Ag, and the Buffington Parties. *See El Dorado Gas & Oil v. Buffington*, No. 6:26-06007-JAW (S.D. Miss.). On April 14, 2026, the bankruptcy court granted First Service Bank's Motion to Intervene. *See id.*, at [31].

The Court disagrees with First Service Bank that Swarek has failed to make that requisite showing with respect to his response. Swarek indicated that "[g]ood cause exists" because "[p]rior counsel for [Swarek] did not timely file a response and thereafter moved to withdraw." [87], p. 1. Indeed, Swarek was represented by counsel in this action early on. [14]. Counsel for Swarek officially withdrew on March 24, 2026—months after the Motion for Summary Judgment was filed and over one hundred and ten days beyond when Swarek's response was due. [82]. As mentioned in Swarek's Motion for Leave to File Response to Plaintiff's Motion for Summary Judgment Out of Time [85], the Order dismissing Swarek's counsel stated that Swarek was to be given "30 days . . . [to] obtain new counsel . . . [or] the Court shall deem [Swarek] as electing to proceed *pro se*." [82]. No new counsel made an appearance in the thirty days that followed, but Swarek filed a motion to proceed *pro se* twenty-four days after that Order was entered. [84]. That same day, Swarek filed his Motion for Leave [85], and his response to summary judgment. [86]. The Court finds these circumstances present "good cause" for Swarek's untimely response. *See Parada v. Pennington*, No. 2:21-CV-534 TS, 2023 WL 1785650, at *2 (D. Utah Feb. 6, 2023) (allowing out of time response during transition of counsel period where briefing would not be significantly impacted and where motion for summary judgment was pending).

But the Court is less convinced that Swarek presents "good cause" for his even more tardy Motion for Leave to File Limited Evidentiary Supplement and supporting materials. [98]; [98-1]; [98-2]; [98-3]; [98-4]. Swarek reiterates he was "transitioning from representation by prior counsel to *pro se* status while simultaneously addressing overlapping proceedings involving the same transactional record" but Swarek waited an *additional thirty-nine days* in filing his Motion for Leave to File Limited Evidentiary Supplement and supporting materials. [98], pps. 1-2. This was

supposedly because, "[a]t the time of filing, [Swarek] sought to avoid burdening the Court with extensive duplicative filings and voluminous exhibit materials" and "believed that many of the relevant factual materials were already before the Court or otherwise accessible through related proceedings involving the same underlying transactions and enforcement activity." *Id*. But Swarek should have realized the Court can ordinarily only consider what is put before it *in this case* unless the Court takes judicial notice of that evidence. *See Brown v. Lippard*, 472 F.3d 384, 387 (5th Cir. 2006) (permitting judicial notice of filings in related case not in the record on summary judgment when "the testimony's existence [is] 'not subject to reasonable dispute' and 'capable of accurate and ready determination[.]'") (quoting FED. R. EVID. 201(b)). Swarek never requested judicial notice of these filings. But all in all, the Court assumes *arguendo* that Swarek's reasons constitute "good cause" because—as the Court explains below—Swarek's additional materials do not prevent summary judgment.

In light of the above timeline, Swarek's *pro se* status, and given the additional materials do not change the result, the Court will consider the materials submitted for the purposes of summary judgment and grant Swarek's motions for leave.

## III. FIRST SERVICE BANK'S MOTION FOR SUMMARY JUDGMENT

First Service Bank has moved for partial summary judgment. First Service Bank met its burden at this stage because First Service Bank established the material terms of each loan at issue in its partial Motion for Summary Judgment—including Swarek's nonperformance under those agreements, and the losses incurred by First Service Bank as a result of Swarek's nonperformance. [68]. Even when considering Swarek's untimely response and supporting materials, the Court finds

summary judgment is appropriate for the claims First Service Bank has moved on.[9] The Court first examines Swarek's factual arguments before resolving Swarek's legal arguments invoking res judicata and forum selection.

**A. Standard of Review**

Summary judgment is warranted when the evidence reveals no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. When a plaintiff files an "offensive" summary judgment, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). "When ruling on a motion for summary judgment, 'the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the [nonmoving party].'" *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

[9] For clarity, First Service Bank does not seek summary judgment against Swarek for its claims regarding Loan No. 396815, Loan No. 6618251 or Loan No. 6619226. [68], p. 1; [101].

**B. Arkansas Law Controls**

The Court must determine whether Mississippi or Arkansas state law applies to the questions presented in this diversity case. Swarek does not argue which state's law controls. First Service Bank's rebuttal wavers between Arkansas law and Mississippi law as to the interpretation of certain contractual language. *Compare* [96], p. 10 *with* [96], p. 11. Each of the loans at issue contain choice-of-law provisions selecting Arkansas law as the governing law for each agreement. *See* [60-1], p. 3 (The Hunting Land Loan); [60-3], p. 3 (same); [60-8], pps. 4, 9 (The 8 Bayou Loan); [60-14], p. 7; [60-15], p. 6 (The Three-Rivers Loan); [60-17], p. 4 (The Airplane Loan); [60-18], p. 3 (same).

While sitting in diversity, federal courts must apply the conflict-of-laws rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941). But the Mississippi Supreme Court has found that a conflict-of-laws "analysis arises only when there is a true conflict between the laws of two states, each having an interest in the litigation." *Zurich Am. Ins. Co. v. Goodwin*, 920 So. 2d 427, 432 (Miss. 2006) (citing *Boardman v. United Servs. Auto. Ass'n,* 470 So.2d 1024, 1038 (Miss. 1985)). Mississippi conducts its conflict-of-laws analysis for each "true conflict." *See Boardman*, 470 So. 2d at 1031. Two potential conflicts exist here.

First, Mississippi and Arkansas have different elements for breach of contract claims. Under Arkansas law, "[t]o establish its breach-of-contract claim, [the plaintiff is] required to prove by a preponderance of the evidence that: (1) there were valid and enforceable contracts; (2) the [defendant] breached their obligations thereunder; and (3) the [plaintiff] suffered damages as a result. *Bank of Am., N.A. v. JB Hanna, LLC*, 766 F.3d 841, 852 (8th Cir. 2014) (citing *Ultracuts Ltd. v. Wal–Mart Stores, Inc.,* 343 Ark. 224, 33 S.W.3d 128, 133 (2000)). By contrast, "[m]onetary

damages are a remedy for, not an element of, breach of contract" under Mississippi law. *Bus. Commc'ns, Inc. v. Banks*, 90 So. 3d 1221, 1225 (Miss. 2012); *4-Way Electric Services, LLC v. Huntcole, LLC*, 366 So.3d 844, 852 (Miss. 2023). Whether these elements differ materially is important at summary judgment, given an "offensive" summary judgment motion "must establish beyond peradventure all of the [claim's] essential elements[.]" *Fontenot*, 780 F.2d at 1194. But this difference in elements does not present a "true conflict" because, as the Court later explains, First Service Bank has established all four elements of breach of contract. Arkansas' elements of breach of contract are overinclusive of Mississippi's elements, so summary judgment would be proper under Mississippi law as well. *See Chapman v. Thrasher Trucking Co.,* 729 F. Supp. 510, 510 (S.D. Miss. 1990) (finding conflict-of-laws analysis is only necessary for conflicts "hav[ing] a significant effect on the outcome of the case").

Second, Swarek claims that a forum selection clause found in some of the agreements he executed somehow impedes this Court in granting partial summary judgment. [86], p. 4. It is unclear as to what clause Swarek is referring to, but First Service Bank identifies a provision present in the loan agreements labeled "JURISDICTION" and contends that Mississippi law should control interpretation of whether that supposed forum selection clause is permissive or mandatory. [96], p. 11, n. 9 (citing *Dynamic CRM Recruiting Sols., L.L.C. v. UMA Educ., Inc.*, 31 F.4th 914, 917-18 (5th Cir. 2022)).

The Court again finds there is no "true conflict" between Mississippi and Arkansas law here. Both states follow the same approach when determining if a forum selection clause is enforceable. *Compare Titan Indem. Co. v. Hood*, 895 So. 2d 138, 146 (Miss. 2004) *with Nelms v. Morgan Portable Bldg. Corp.*, 305 Ark. 284, 289, 808 S.W.2d 314, 316 (1991) (both adopting approach

in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972)). But while "the *enforceability* of [a forum selection clause] is governed by federal law[,]" courts must first interpret the contract "to determine whether it is mandatory or permissive [before] its enforceability come[s] into play." *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 770 (5th Cir. 2016) (emphasis in original). That "is a legal issue of contract construction" requiring a federal court sitting in diversity to apply state law. *Dunne v. Libbra*, 330 F.3d 1062, 1063 (8th Cir. 2003).

But unlike Mississippi, the Arkansas Supreme Court has not had the opportunity to articulate its method for determining whether a forum selection clause is mandatory or permissive. *See Luxe Homes, LLC v. Brewer*, 359 So. 3d 626, 630 (Miss. 2023); *see generally* 32 A.L.R.6th 419. Thus, this Court is "required to make an *Erie* guess as to what the [Arkansas] Supreme Court would most likely decide." *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 558 (5th Cir. 2002) (citing *Barfield v. Madison County, Miss.*, 212 F.3d 269, 271-72 (5th Cir. 2000)). In doing so, it can "defer to intermediate state appellate court decisions 'unless convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Herrmann Holdings*, 302 F.3d at 558 (quoting *First Nat'l Bank of Durant v. Trans Terra Corp.*, 142 F.3d 802, 809 (5th Cir.1998)).

Decisions from the Court of Appeals of Arkansas have determined that a venue clause was permissive based on its lack of mandatory language compelling the use of a particular forum. *See Buffington v. Diamoind Transp. & Drilling, LLC*, 2011 Ark. App. 76, at *2 (2011); *Phillips v. DeLage Landen Fin. Servs.*, 2019 Ark. App. 44, 13, 571 S.W.3d 512, 518 (2019). For example, the provision at issue in *Buffington* stated in full:

> "16. *Governing Law and Venue.* This agreement shall be subject to, construed and enforced in accordance with the laws of the State of Louisiana."

*Id.* The *Buffington* court found that "[t]his provision does not state that the *parties* agree to be heard only in one particular venue." *Id.* (emphasis in original) (collecting cases). It surmised that, "[e]ven if it did mention a particular venue, it did not make the choice mandatory" and concluded that, "[a]bsent an express agreement on venue in the operative wording, and in light of the absence of any mandatory language on venue," the trial court erred in finding venue was improper. *Id.*

This decision is consistent with other Arkansas law interpreting contractual provisions. The Arkansas Supreme Court has found that "[w]hen contracting parties express their intention in a written instrument in clear and unambiguous language, it is the court's duty to construe the writing in accordance with the plain meaning of the language employed." *Artman v. Hoy*, 370 Ark. 131, 136-37, 257 S.W.3d 864, 869 (2007); *see Hancock v. Tri-State Ins. Co.*, 43 Ark. App. 47, 51, 858 S.W.2d 152, 154 (1993) (en banc). Arkansas courts gather the parties' intent "not from particular words and phrases, but from the entire agreement." *E B Mgmt. Co., LLC v. Houston Specialty Ins. Co.*, 2019 Ark. App. 294, 8, 577 S.W.3d 408, 413 (2019). But when possible, "[d]ifferent clauses in a contract must be read together and construed so that all of its parts harmonize," and courts applying Arkansas law should not "give effect to one clause over another on the same subject if the two clauses are reconcilable." *Lee v. Bolan*, 2010 Ark. App. 209, 7, 374 S.W.3d 718, 723 (2010).

The *Buffington* decision and the aforementioned principles of Arkansas contractual interpretation establish there is no "true conflict" in how Arkansas or Mississippi would interpret whether forum selection clauses are mandatory or permissive. Mississippi shares the same general contract interpretation principles as Arkansas. *See, e.g., Rotenberry v. Hooker*, 864 So. 2d 266, 270 (Miss. 2003) ("If the language in the contract is clear and unambiguous the intent of the contract must be effectuated.") (citing *Pfisterer v. Noble,* 320 So.2d 383, 384 (Miss.1975)). And as First

Service Bank points out, Mississippi mimics the *Buffington* court's approach when interpreting forum selection clauses as mandatory or permissive, examining the clause to determine if it contains mandatory language like "solely," *Rigsby v. Am. Credit Couns., Inc.*, 215 So. 3d 526, 531 (Miss. Ct. App. 2017), "exclusive," *Titan Indemnity*, 895 So. 2d at 146, or "shall," *Luxe Homes*, 359 So. 3d at 630-31. [96], p. 12. Thus, the Court need not continue Mississippi's conflict-of-laws analysis because—as the Court explains in much more detail toward the end of this opinion—the language of the "JURISDICTION" clause is permissive, not mandatory, under Mississippi or Arkansas law. *See Chapman,* 729 F. Supp. at 510.

**C. First Service Bank Has Met Its Burden**

First Service Bank has met its burden regarding the obligations and responsibilities imposed on Swarek as a borrower or guarantor. The loan agreements, guarantees, and notices cited by First Service Bank unambiguously provide the material terms of each of the four loans currently at issue here. *See, e.g., Bank of America, N.A.*, 766 F.3d at 852 (finding jury verdict was against weight of the evidence when contract was breached under Arkansas law after the parties entered into enforceable contracts, the bank satisfied its commitments thereunder, the borrower failed to fulfill their obligations under those contracts, and the bank was financially harmed as a result). In other words, the materials First Service Bank references in its Motion for Summary Judgment [68] show Swarek's nonperformance of those obligations sufficient to sustain First Service Bank's request for partial summary judgment.

Now the Court examines whether Swarek has raised any issues necessitating against summary judgment. "A court cannot grant a motion for summary judgment simply because it is unopposed." *Keystone Real Est. Lending Funds, L.P. v. Fletcher*, No. 1:19-cv-263-HSO, 2020 WL

4690059, at *3 (S.D. Miss. Jan. 27, 2020) (citing *Day v. Wells Fargo Bank Nat. Ass'n*, 768 F.3d 435, 435 (5th Cir. 2014)). But a party opposing summary judgment cannot rest on "mere allegations contained in the pleadings, and must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas*, 136 F.3d at 458 (citing *Anderson,* 477 U.S. at 255-57, 106 S. Ct. at 2513-14. This includes identifying "specific evidence in the record" and articulating "the precise manner in which that evidence supports his or her claim." *Ragas*, 136 F.3d at 458 (citing *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir. 1994)). That evidence may include "depositions, . . . affidavits or declarations, . . . or other materials." FED. R. CIV. P. 56(c)(1). "When evaluating a motion for summary judgment, a court refrains from making credibility determinations and views the evidence in the light favorable to the non-movant." *Seshadri Raju, M.D., P.A. v. Medtronic, Inc.*, No. 3:17-cv-357-CWR-, 2021 WL 1232102, at *7 (S.D. Miss. Mar. 31, 2021) (citing *Strong v. Dep't of Army*, 414 F. Supp. 2d 625, 628 (S.D. Miss. 2005)).

Swarek only makes unsupported and conclusory arguments in opposition. As First Service Bank correctly points out, "Swarek's four 'genuine disputes' rely solely on his own motion response with no supporting evidence—not a declaration, affidavit, deposition excerpt, business record, interrogatory response, admission, or any other competent Rule 56 material." [96], p. 2. Further, even considering his "evidentiary supplement," Swarek still fails to show why summary judgment is improper. [98]. For Swarek to "avoid summary judgment" he must have identified "admissible evidence in the record showing a fact[ual] dispute." *Seshadri Raju, M.D., P.A.*, 2021 WL 1232102, at *7 (citing FED. R. CIV. P. 56(c)(1)). As the Court explains below, he did no such thing.

First, Swarek claims that genuine issues of material fact remain regarding "the true funding, consideration, and disbursement of loan proceeds." [86], p. 3. Swarek "disputes that [First Service Bank] has established, as a matter of undisputed fact," that the loans at issue were "funded, advanced, and handled in the manner [First Service Bank] now represents" or that those funds were "disbursed in the manner required[.]" *Id.* However, Swarek's opposition materials never mention any of the loan agreements at issue here, let alone what loan funds were or were not disbursed in the correct way. The Court cannot magically ascertain what issues Swarek is referring to based on his vague and conclusory filings. Admittedly, it has no obligation to do so given "[j]udges are not like pigs, hunting for truffles buried [in the record]." *Murthy v. Missour*i, 603 U.S. 43, 67 n.7, 144 S. Ct. 1972, 219 L. Ed. 2d 604 (2024) (quoting *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 702 (7th Cir. 2010) (internal quotation marks omitted)). And "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment[.]" *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n. 7 (5th Cir.), *cert. denied,* 506 U.S. 832, 113 S. Ct. 98, 121 L. Ed. 2d 59 (1992). Thus, the Court finds Swarek's first argument does not raise a genuine issue of material fact.

Second, Swarek claims "the defaults and acceleration events Plaintiff relies upon" are another area where genuine issues of material fact remain. [86], p. 3. Again, Swarek does not cite to any notice he received or any provision of the loan agreements at issue to substantiate this allegation. Instead, Swarek confines his argument to a conclusory statement that the loans at issue cannot be separated from "the broader collapse of operations that followed the foreclosure, account seizures and shutdowns tied to the $50 million Main Street Loan dispute (*First Service Bank v. Swarek*, 1:24-cv-20-TBM (S.D. Miss.))." [86], p. 3. As the Court made clear in its prior Order [54],

the Main Street Loan is not at issue in this matter; First Service Bank seeks summary judgment related to four *different* loans Swarek executed as a borrower or guarantor.

Also, Swarek's untimely materials do not make a difference. [100], p. 9. Assuming, without deciding, that the emails, settlement statement or affidavit excerpt attached to Swarek's Motion for Leave to File Limited Evidentiary Supplement are even admissible,[10] those materials do not defeat summary judgment. Even when viewing this evidence "in the light most favorable to" Swarek, the materials do not answer the operative question before the Court: did Swarek meet his obligations under the 8 Bayou Loan (Loan No. 396817), the Hunting Land Loan (Loan No. 396745), the Three-Rivers Loan (Loan No. 396857), or the Airplane Loan (Loan No. 396087)? [98]; *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 377 (5th Cir. 2010). A different result may have occurred if the additional materials disputed First Service Bank's narrative regarding the execution, renewal, modification, enforceability, default, acceleration, or amounts due on *those loans*. But the materials submitted by Swarek appear to revolve around the Main Street Loan, and without further explanation from Swarek, the Court declines to sift through the record and construct that argument for him. *See Murthy*, 603 U.S. at 67, n.7. Swarek's second argument also does not raise a genuine issue of material fact.

Third, Swarek claims genuine issues of material fact exist as to the loan amounts claimed by First Service Bank. [86], p. 3. This is an unsupported allegation. Importantly, the McJunkins declaration meticulously cites each relevant instrument, showing the principal, pre-filing interest (through December 1, 2025), prejudgment per-diem interest, and consequential damages related

[10] First Service Bank objects that each attachment to Swarek's Motion for Leave to File Limited Evidentiary Supplement is inadmissible under various Federal Rules of Evidence, including: F.R.E. 103(a)(1), 402, 802, and 901. [98-1]; [98-2]; [98-3] and [98-4].

to each loan. [68-1], pps. 2-4. Although Swarek "disputes the accuracy, completeness, and legal sufficiency of those amount calculations" or that First Service Bank "has shown the absence of all material fact issues" regarding these amounts or any offsets done by First Service Bank, [86], p. 3, Swarek does not cite to any evidence—either in the record or his untimely summary judgment materials—that actually rebut any amount claimed by McJunkins. Such "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment. *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003). The Court finds Swarek's third argument does not raise a genuine issue of material fact either.

Fourth, Swarek claims genuine issues of material fact exist "because core related issues are presently being litigated elsewhere." [86], p. 3. Swarek notes that, at the time he filed his response, Swarek filed a pending *second* motion for reconsideration concerning this Court's decision to grant First Service Bank's request for summary judgment and default judgment in *Swarek I,* [79], and an appeal related to the Court's denial of Swarek's first motion for reconsideration, *First Service Bank v. Swarek*, 25-60618 (5th Cir. 2025). But this Court has since denied Swarek's second reconsideration motion [88], and Swarek appealed that decision, *First Service Bank v. Swarek*, 26-60550 (5th Cir. 2026). The Court is unaware of any decision in this Circuit that suggests those facts, on their own, necessitate a denial of summary judgment. Although Swarek indicates those proceedings "concern, among other things, the Main Street Loan, the bank's conduct, the chronology and factual integrity of the underlying transactions, and the causal events that led to the collapse of operations[,]" Swarek does not go further. [86], pps. 3-4. He needed to further develop this argument by citing to specific evidence in the record to rebut the otherwise clear and unambiguous language within the instruments and notices First Service Bank cites. The conclusory

arguments levied by Swarek fail to dispute the critical issue of whether he owes money under the loan agreements and guarantees at issue *in this action*. Therefore, the Court finds Swarek's fourth argument does not raise a genuine issue of material fact.

**D. The Forum Selection Clause is Permissive**

Swarek also raises in his response that "the governing instruments appear to tie federal venue to the district including the lender's location, which raises at minimum a question of whether piecemeal enforcement in this forum should proceed to partial final judgment while overlapping issues remain active elsewhere." [86], p. 4. Swarek does not identify any "governing instruments" in his response. Nor does he not offer an alternate venue or even why another court would have the jurisdiction to hear this case. But First Service Bank surmises Swarek is relying on the following provision of the loan agreements:

> **JURISDICTION**. The Parties agree to waive any objection to jurisdiction or venue on the ground that the Parties are not residents of Lender's locality. The Parties authorize any action brought to enforce the Parties' obligations to be instituted and prosecuted in any state court having jurisdiction or in the United States District Court for the District that includes Lender's location as set forth at the beginning of this Agreement. The Parties authorize Lender to elect the court at Lender's sole discretion.

[1-11], p. 5 (The 8 Bayou Loan).[11]

The question presented is whether "the parties have agreed to litigate their dispute only in the chosen forum or have merely consented to jurisdiction and venue in that place." § 9:17. Forum selection clauses, 2 Arkansas Civil Prac. & Proc. § 9:17 (5th ed.). The Court finds the "JURISDICTION" clause's language indicates the parties sought to do the latter, in that the loan

[11] The same provision appears in the other loan agreements Swarek guaranteed on behalf of his businesses, but does not appear in the separate unlimited continuing guarantees he executed with First Service Bank. *Compare* [60-17], p. 4 (The Airplane Loan Agreement) *with* [60-18] (The Airplane Loan Guarantees).

agreement documents only permit—but do not mandate—that this action be brought in an Arkansas federal or state court.

The Court reaches that conclusion by first reading the clause itself. *Coleman v. Regions Bank*, 364 Ark. 59, 65, 216 S.W.3d 569, 574 (2005) ("The first rule of interpretation of a contract is to give to the language employed the meaning that the parties intended."). The plain language of the clause does not indicate it is mandatory. *See Dunne*, 330 F.3d at 1064 (applying Illinois law) (finding plain language of forum selection clause was permissive because it did not employ the terms "shall," "exclusive," "only," "must," or "any other terms that might suggest exclusivity."). Instead, the clause states the parties "authorize" any action brought to enforce the loan obligations "in any state court having jurisdiction" or "in the United States District Court for the District that includes Lender's location" in Dermott, Arkansas. [1-11], p. 5.

In light of the requirement that this Court "consider the sense and meaning" of the operative words included within the clause, *Rausch Coleman Homes, LLC v. Brech*, 2009 Ark. App. 225, 5, 303 S.W.3d 456, 458 (2009), the Court defines the clause's operative verb, "authorize." To "authorize" is defined as "[t]o give legal authority; to empower" or "[t]o formally approve; to sanction[.]" BLACK'S LAW DICTIONARY 163 (Bryan A. Gardner, et. al. eds., 12th ed. 2024). Another common dictionary explains to "authorize" is "to endorse, empower, justify or permit by or as if by some recognized or proper authority (as custom evidence, personal right, or regulating power)[.]" WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 146 (Philip B. Gove, et al. eds. 1993). Thus, a plain reading of language within the parties' agreement certainly *empowers* or *permits* them to seek recourse in any state court where jurisdiction is proper, as well as the Eastern District

of Arkansas.[12] However, it does not go as far as to *require* that such locales serve as the *exclusive* venue for controversies arising from these agreements.

This interpretation aligns with other decisions by Arkansas courts. *See Buffington*, 2011 Ark. App. 76, at *2; *BAAN, U.S.A. v. USA Truck, Inc.*, 82 Ark. App. 202, 205, 105 S.W.3d 784, 786 (2003); *Phillips*, 2019 Ark. App. at 13, 571 S.W.3d at 518. For example, the Arkansas Court of Appeals found that a forum selection clause was mandatory when it that stated "[a]ll disputes arising out of this Agreement *shall* be subject to the *exclusive* jurisdiction of any federal or state court or courts sitting in San Jose, California, which courts are empowered to try the dispute, and the parties hereby agree to submit to the personal and *exclusive* jurisdiction and venue of these courts." *BAAN, U.S.A.*, 82 Ark. App. at 205, 105 S.W.3d at 786 (emphasis added). By contrast, Arkansas courts have found a forum selection clause to be permissive where it stated "[y]ou consent to the jurisdiction and venue of the Federal and State courts in Minnesota." *Phillips*, 2019 Ark. App. at 13, 571 S.W.3d at 518. When interpreting the latter, that court found that language "simply means that the parties agree to be hailed into Minnesota courts if necessary." *Id.*

It is longstanding law in Arkansas that "[t]he best construction is that which is made by viewing the subject of the contract, as the mass of mankind would view it[.]" *Missouri Pac. R. Co. v. Strohacker*, 202 Ark. 645, 152 S.W.2d 557, 563 (1941) (quoting *Schuylkill Nav. Co. v. Moore*, 1837 WL 3186, at *1 (Pa. 1837)). In the spirit of that principle and understanding that "[d]ifferent clauses of a contract must be read together . . . so that all of its parts harmonize, if that is at all possible," the Court examines the "JURISDICTION" clause as a whole. *Cont'l Cas. Co. v. Davidson*, 250 Ark. 35, 41, 463 S.W.2d 652, 655 (1971). For instance, the preceding sentence of the clause indicates that

---

[12] Dermott, Arkansas is in Chicot County, located within the Eastern District of Arkansas.

"[t]he Parties agree to waive any objection to jurisdiction or venue on the ground that the Parties are not residents of Lender's locality[.]" [1-11], p. 5. That reinforces the inference that the spirit of the clause related to whether parties would contest a case being brought in Arkansas. Similarly, the sentence immediately following the contested provision states "[t]he Parties authorize Lender to elect the court at Lender's sole discretion." [1-11], p. 5. No language is included to cabin First Service Bank's discretion, like verbiage that First Service Bank's discretion was limited to "these" or "the aforementioned" courts. Taken together, the "JURISDICTION" clause suggests Arkansas was a valid venue for resolving any controversy arising out of the agreements, but not that it was the *only* venue for litigating such disputes.[13] As such, the "JURISDICTION" clause is permissive.[14]

**E. Res Judicata Does Not Apply**

In his response, Swarek makes a claim splitting claim argument as well, also known as res judicata. But Swarek does not analyze this argument at all—much less cite any law in support. Swarek's argument can be disregarded for this reason alone. Nonetheless, for the sake of completeness, the Court assesses the validity of his argument.

Swarek writes that "Plaintiff's litigation posture raises concerns of claim splitting and piecemeal adjudication" because "Plaintiff seeks to obtain a partial final judgment here while overlapping guarantees, overlapping parties, and overlapping factual predicates remain the subject of related proceedings." [86] at 4. Swarek contends this "overlap further demonstrates why summary judgment and Rule 54(b) certification are inappropriate at this stage." *Id.* Swarek's

---

[13] The Court "need not here consider enforceability of [this] forum selection clause, however[,]" given its finding that the clause is permissive. *Caldas & Sons, Inc. v. Willingham*, 17 F.3d 123, 127 (5th Cir. 1994).

[14] First Service Bank alleges in the alternative that Swarek has waived any mandatory forum selection clause by his continued participation in the case *sub judice*. [96], pps. 12-15. The Court declines to reach this argument because it concludes that the forum selection clause is permissive.

counsel, however, did not plead res judicata in his motion to dismiss [16], and Swarek did not plead res judicata in his answer, [18]. Swarek has not filed an amended answer to the first amended complaint. As a result, his defense would typically be waived, as "[r]es judicata is an affirmative defense which is considered waived if not specifically pleaded in the answer or in an amended answer permitted under Fed. R. Civ. P. 15(a)." *Banc One Capital Partners Corp. v. Kneipper,* 67 F.3d 1187, 1199 (5th Cir. 1995). But the Fifth Circuit recognizes two exceptions to the general rule, both of which could apply here.

The first exception allows for "[d]ismissal by the court sua sponte on res judicata grounds . . . in the interest of judicial economy where both actions were brought before the same court." *Boone v. Kurtz,* 617 F.2d 435, 436 (5th Cir. 1980). This exception could apply because both *Swarek I* (*First Service Bank v. Swarek*, 1:24-cv-20-TBM (S.D. Miss.)) and this action were brought in the same federal district court, the Southern District of Mississippi. *See Mowbray v. Cameron Cnty., Tex.*, 274 F.3d 269, 281 (5th Cir. 2001). The second exception lies "where all of the relevant facts are contained in the record . . . are uncontroverted[.]" *Am. Furniture Co. v. Int'l Accommodations Supply*, 721 F.2d 478, 482 (5th Cir. 1981). Although Swarek has alleged conclusory arguments against First Service Bank's narrative regarding the loans at issue, he has failed to raise any genuine issues of material fact.[15]

[15] There is no indication that First Service Bank is prejudiced by such a finding, as "there was no prejudice to the plaintiffs, who had ample notice and opportunity to argue against an estoppel." *LaCroix v. Marshall Cnty., Mississippi*, 409 F. App'x 794, 801 (5th Cir. 2011). First Service Bank "certainly had notice of the prior judgment" given it "had litigated it just a few months earlier[,]" *Mowbray*, 274 F.3d at 281, and First Service Bank has not been denied "'the chance to argue . . . why the imposition of an estoppel would be inappropriate.'" *American Furniture Co.*, 721 F.2d at 482 (quoting *Blonder–Tongue Labs. v. Univ. of Illinois Found.*, 402 U.S. 313, 350, 91 S. Ct. 1434, 28 L. Ed. 2d 788 (1971)).

"Where one federal court is considering the res judicata [e]ffect of another federal court's judgment in a diversity action, the federal common law of res judicata should be applied to protect the integrity of federal judgments, even though a decision is based on state law." *In re Air Crash at Dallas/Fort Worth Airport on Aug. 2, 1985*, 861 F.2d 814, 816 (5th Cir. 1988) (citing *Kurzweg v. Marple,* 841 F.2d 635, 639 (5th Cir. 1988)). The test for preclusion based upon res judicata has four elements: (i) "there must be a final judgment on the merits"; (ii) "the decision must have been rendered by a court of competent jurisdiction"; (iii) "the parties or their privies must be identical in each suit," and (iv) "both suits must concern the same cause of action." *In re Air Crash*, 861 F.2d at 816 (citing *Hart v. Yamaha Parts Distributors, Inc.,* 787 F.2d 1468, 1470 (11th Cir. 1986)).

*Swarek I* reached a final judgment on the merits when the Court entered default judgment and summary judgment against Swarek and the companies he controls. *First Service Bank v. World Aircraft, Inc., et al.*, No. 1:24-cv-20-TBM, 2024 WL 3404604 (S.D. Miss. Jul. 12, 2024); *Swarek I*, [47]. It does not matter that Swarek has since appealed that decision, because "[a] case pending appeal is res judicata and entitled to full faith and credit unless and until reversed on appeal." *Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460, 467 (5th Cir. 2013) (citing *Fid. Standard Life Ins. Co. v. First Nat'l Bank & Trust Co.,* 510 F.2d 272, 273 (5th Cir. 1975) (per curiam)); 18A Charles A. Wright & Arthur D. Miller, Federal Practice and Procedure § 4427 (2d ed. 2012) ("[R]es judicata ordinarily attaches to a final lower-court judgment even though an appeal has been taken and remains undecided."). This Court's decision in the first suit meets the second element, as it was rendered by this Court. The third element is also arguably met because the first suit involved essentially the same parties, First Service Bank as the plaintiff, and Swarek and the entities he controlled, as defendants.

Swarek's res judicata claim fails at the last element because the two suits did not involve the "same cause of action." The Fifth Circuit has adopted the transactional test of the Restatement (Second) of Judgments, § 24 to answer "whether two suits involve the same claim or cause of action[.]" *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395 (5th Cir. 2004). "Thus, the critical issue is whether the two actions under consideration are based on 'the *same nucleus of operative facts.*'" *In re Southmark Corp.*, 163 F.3d 925, 934 (5th Cir. 1999) (citations omitted). In making that determination, the Court looks at whether the two events are "related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Petro-Hunt*, 365 F.3d at 396 (quoting Restatement (Second) of Judgments § 24(2) (1982)).

While "the theories underlying these actions were based on different contracts[,]" that fact does not, in and of itself, "transform the theories into separate causes of action." *Agrilectric Power Partners, Ltd. v. Gen. Elec. Co.*, 20 F.3d 663, 665 (5th Cir. 1994). For example, the Fifth Circuit has found that the fourth element is met where both suits involve "the same accident," or "the same damages." *Id.* But that is not the case here. As this is not a situation where "the operative facts involve the very same breach of the same loan agreement that was at issue in" the first action. *Wicker v. Seterus, Inc.*, No. EP-15-cv-331-KC, 2016 WL 2622017, at *7 (W.D. Tex. May 5, 2016). Each of the four pertinent loan agreements at issue in this action involve separate transactions. Although First Service Bank could have pursued an omnibus case against Swarek for every loan at issue to "form a convenient trial unit," it is unclear whether treating these transactions as a unit would conform to the "parties' expectations or business understanding or usage"—especially

considering each transaction is years apart in "time," different in "origin," and created from separate "motivation[s.]" *Petro-Hunt*, 365 F.3d at 396.

For example, the Fifth Circuit in *Petro-Hunt* found that an action to quiet title in one property does not have res judicata effect on another action that raises the same legal issues and involves a similar type of action against adjacent property. 365 F.3d at 396. This is because "these observations of factual similarity, although potentially relevant for purposes of collateral estoppel, are not relevant to *res judicata*." *Id.* "Although similar in principle, true *res judicata* is concerned with a sameness of operative facts." *Id.* The loan agreements at issue in this case involve Swarek and the companies he controlled on one end, and First Service Bank on the other end. Those agreements even featured cross-collateral provisions that secured the loans with the same collateral. Naturally, a controversy involving those agreements "may raise the same legal issues that would also be in question in a[ ] similar type of action involving" a different loan. *Id.* at 397. But "the operative facts of the two actions would be distinct." *Id.*

Since the loans at issue do not have same nucleus of operative facts, preclusion based on res judicata is not appropriate.

## III. FIRST SERVICE BANK'S MOTION TO DISMISS THE BUFFINGTON PARTIES

First Service Bank also asks the Court to dismiss its claims against Bill D. Buffington, GS Holdings, Inc., and Cottonwood Recreation Land, Inc. without prejudice. [87]. Federal Rule of Civil Procedure, "Rule 41(a) allows plaintiffs to voluntarily dismiss 'an action.'" *Williams v. Seidenbach*, 958 F.3d 341, 344 (5th Cir. 2020) (en banc). First Service Bank's request is unopposed.

First Service Bank's request is granted. "Rule 41(a) permits a plaintiff to dismiss just one defendant, 'even though the action against another defendant would remain pending.'" *See Nat'l*

*City Golf Fin. v. Scott*, 899 F.3d 412, 415 n.3 (5th Cir. 2018) (quoting *Plains Growers, Inc. ex rel. Florists' Mut. Ins. Co. v. Ickes-Braun Glasshouses, Inc.*, 474 F.2d 250, 253 (5th Cir. 1973)). The "Buffington Parties" (Bill D. Buffington, GS Holdings, Inc., and Cottonwood Recreation Land, Inc.) are hereby dismissed from this action.

First Service Bank's motion also requests an extension to respond to pending discovery from the Buffington Parties. That request is moot given that the Court has found the Buffington Parties are dismissed from the present action.

## IV. FINAL JUDGMENT UNDER RULE 54(b)

First Service Bank requests entry of partial final judgment under Federal Rule of Civil Procedure, Rule 54(b). [96], pps. 15-16; FED. R. CIV. P. 54(b). Swarek makes no mention of First Service Bank's request in his filings. The Rule provides in relevant part that:

> When an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

FED. R. CIV. P. 54(b).

"[I]n making determinations under Rule 54(b)[, a] district court must first determine that it is dealing with a "final judgment." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7, 100 S. Ct. 1460, 1464, 64 L. Ed. 2d 1 (1980) (citing *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 76 S. Ct. 895, 100 L. Ed. 1297 (1956)). "It must be a 'judgment' in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Curtiss-Wright*, 446 U.S. at 7, 100 S. Ct.

at 1464 (citing *Sears*, 351 U.S., at 436, 76 S. Ct., at 900). This Order is a "final judgment" because it ultimately disposes of some of First Service Bank's claims, even though this Order does not resolve every claim still pending in this case.

After determining if an order is a "final judgment," the Court "must go on to determine whether there is any just reason for delay." *Curtiss-Wright Corp.*, 446 U.S. at 8, 100 S. Ct. at 1464-65. The Court's function "under the Rule is to act as a 'dispatcher.'" *Id.* (citing *Sears*, 351 U.S., at 435, 76 S. Ct. at 899). In that role, the district court has the ability to "exercise its authority to certify claims for appeal under 54(b) 'in the sound interest of judicial administration', taking into account such factors as 'whether the claims under review were separable from others remaining to be adjudicated and whether the nature of the claims to be determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals.'" *H & W Indus., Inc. v. Formosa Plastics Corp., USA*, 860 F.2d 172, 175 (5th Cir. 1988) (quoting *Curtiss–Wright,* 446 U.S. at 8, 100 S. Ct. at 1465).

The Court finds there is no just cause for delay in certifying this Order under Rule 54(b).[16] Swarek can appeal this Order, as he has done so other times in *Swarek I. See First Service Bank v. Swarek*, No. 25-60618 (5th Cir. 2025); *First Service Bank v. Swarek*, No. 26-60550 (5th Cir. 2026). Given First Service Bank "modifie[d]" its Motion for Summary Judgment to "remove its request for summary judgment on Loan No. 6618251 ([The] Antique Warehouse Loan) and Loan No.

---

[16] First Service Bank's requests for dismissals without prejudice do not change this conclusion. First Service Bank indicates that its claim against Swarek related to Loan No. 396815 will be dismissed without prejudice. [1]; [69], p. 1-2. The Buffington Parties are also dismissed without prejudice. [87]. "[A]ppellate jurisdiction over a non-final order cannot be created by dismissing the remaining claims without prejudice." *Swope v. Columbian Chemicals Co.*, 281 F.3d 185, 192 (5th Cir. 2002). But a non-final order becomes appealable if the party requests, and the court grants, Rule 54(b) certification. *Id.* (finding jurisdiction for appeal where summary judgment was granted on all claims except one voluntarily dismissed under Rule 41(a)); *see Williams*, 958 F.3d at 344 ("Rule 54(b) authorize[s] the district court to enter partial final judgment following the dismissal of the remaining defendants under Rule 41(a)[.]").

6619226 ([The] Elkhart Loan)[,]" and since First Service Bank says it will eventually seek dismissal without prejudice of another loan (Loan No. 396815) [68], there are still claims pending before this Court—at least until First Service Bank clarifies whether it seeks to voluntarily dismiss them. [101]. But as First Service Bank accurately points out, "[t]he claims on which [it] seeks judgment are discrete written obligations . . . proved through separate loan documents, separate evidence, and loan-specific payoff amounts." [96], p. 15. Therefore, "the nature of the claims to be determined" in any subsequent appeal would not require the Fifth Circuit "to decide the same issues more than once[.]" *Curtiss-Wright,* 446 U.S. at 8, 100 S. Ct. at 1465; [96], pps. 15-16. The Court "exercise[s] its discretion in the interest of sound judicial administration," and certifies this Order under Rule 54(b). *Sears*, 351 U.S. at 437, 76 S. Ct. at 900.

## V. CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that Swarek's Motion for Leave to File Response to Plaintiff's Motion for Summary Judgment Out of Time [85] is GRANTED.

IT IS FURTHER ORDERED AND ADJUDGED that Swarek's Motion for Leave to File Limited Evidentiary Supplement [98] is GRANTED.

IT IS FURTHER ORDERED AND ADJUDGED that First Service Bank's request for Rule 54(b) certification [68]; [101] is GRANTED.

IT IS FURTHER ORDERED AND ADJUDGED that First Service Bank's Motion to Dismiss [87] is GRANTED IN PART and MOOT IN PART.

IT IS FURTHER ORDERED AND ADJUDGED that First Service Bank's partial Motion for Summary Judgment [68], which as modified [101], involves First Service Bank's claims under Loan No. 396817 (The 8 Bayou Loan); Loan No. 396745 (The Hunting Land Loan); Loan No.

396857 (The Three-Rivers Loan); and Loan No. 396087 (The Airplane Loan) is GRANTED against Thomas Swarek in the amounts indicated below, plus prejudgment interest from December 1, 2025 to the date of entry of the judgment per the per-diem rate indicated below, plus post-judgment interest at the current prescribed federal rate pursuant to 28 U.S.C. § 1961, from the date of entry of this judgment until paid in full:

| **Name** | **Loan Number** | **Status** | **Amount Owed** | **Per-Diem Interest** |
| --- | --- | --- | --- | --- |
| The 8 Bayou Loan | 396817 | Borrower | $275,378.95 | $36.77 |
| The Hunting Land Loan | 396745 | Guarantor | $1,163,945.53 | $170.83 |
| The Three-Rivers Loan | 396857 | Guarantor | $380,817.76 | $55.39 |
| The Airplane Loan | 396087 | Guarantor | $709,756.66 | $115.62 |

This, the 29th day of September, 2026.

TAYLOR B. McNEEL
UNITED STATES DISTRICT JUDGE